Argued March 20, affirmed May 1, 1923.

# STREBY *v.* STATE INDUSTRIAL ACCIDENT COMMISSION.

(215 Pac. 586.)

**Appeal and Error—No Appeal Without Proper Notice.**

1. An appeal cannot be taken without proper notice.

**Master and Servant—Motion to Dismiss Appeal in Compensation Case for Defective Notice of Appeal Held Insufficient to Raise Question for Review.**

2. A motion to dismiss an appeal to the Circuit Court from an order of the Industrial Accident Commission for the reason that the notice of appeal is "fatally defective" without stating the facts constituting such defect is insufficient to raise the question that the court erred in overruling the motion to dismiss on account of the absence of proof of service of such notice.

**Appeal and Error—Transcript must Disclose Notice of Appeal and Proof of Service.**

3. The right of appeal being statutory, the procedure authorizing it must be followed, and hence the transcript must disclose notice

of appeal and proof of service thereof as required by Section 550, Or. L., amending act of Oct. 11, 1862, Section 527.

**Master and Servant—Proof of Service of Notice of Appeal in Compensation Case Held Sufficient.**

4.   Section 550, Or. L., providing for notice of appeal, does not apply to appeals from findings by the Industrial Accident Commission, which are governed by Laws of 1921, Chapter 311, Section 10, amending Section 6637, Or. L., and where it appears from the record that compensation claimant appealing from the commission's decision has complied with the latter section, having filed notice and served copy thereof on the commission within sixty days' limitation, proof of service being shown by admission by defendant's attorney and also by affidavit made by claimant's attorney, he was not required to indorse proof of service on the original notice, as required by Section 550.

**Master and Servant—Painter Held a "Workman" Within Compensation Law, and not an "Independent Contractor."**

5.   One contracting to paint a porch and pergola for $7.50 a day, subject to the direction and control of his employer, *held* a "workman" as defined by the workmen's compensation law (Section 6619, Or. L.), and not an "independent contractor," meaning one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to control except as to results.

From Multnomah: ROBERT R. TUCKER, Judge.

Department 2.

This is an appeal by the State Industrial Accident Commission, from a judgment vacating its order "rejecting plaintiff's claim for compensation for injuries received * * , while employed by E. J. Turner."

On January 23, 1922, Frank I. Streby, while engaged in painting a porch and pergola for one E. J. Turner, fell from a scaffold, and, as a result, both of his legs were broken. On January 31, 1922, a claim was filed with the State Industrial Accident Commission for compensation. Investigation was made by the commission and the claim rejected on the ground that claimant was an independent contractor. Thereafter, and within sixty days, the time

limited by law, the claimant filed notice of appeal to the Circuit Court, reading:

"To the State Industrial Accident Commission of Oregon:

"You, and each of you, are hereby required to take notice that Frank I. Streby, a resident and inhabitant of the county of Multnomah, Oregon, does hereby appeal to the Circuit Court of the State of Oregon in and for Multnomah County, from the certain order and decision of the said State Industrial Accident Commission in the matter of the claim of the above named Frank I. Streby, for certain injuries received on the 23d day of January, 1922, while in the employ of E. J. Turner, in the city of Portland, engaged in painting at #645 Thompson Street on property of which one Frank Lucas was the lawful possessor at the time of said injuries, which personal injuries arose during the course of the employment of the said Frank I. Streby and for which said State Industrial Accident Commission did, on the 14th day of February, 1922, refuse to make any award, refusing to make an award of compensation for the injuries received by said Frank I. Streby, and the said appellant does hereby demand a jury trial of all questions of fact arising on said appeal.

"Wherefore, appellant prays that the said decision of the above-named respondent be reversed and modified, and that this court shall refer back to the commission the proceedings in this cause, with an order directing said commission to fix the compensation of the appellant in accordance with the schedules fixed by the State Industrial Act, and make findings in connection with the matter submitted to the court for decision, and for his costs and disbursements in this action.

"W. P. Lord,                          "Frank I. Streby,
     "Attorney for Petitioner.              "Petitioner.

"State of Oregon
County of Multnomah,—ss.

"I, Wm. P. Lord, being first duly sworn, depose and say, that I am attorney of record herein, residing

in Portland, Multnomah County, Oregon; that on the 25th day of February, 1922, I served a true copy of the foregoing notice of appeal herein on said State Industrial Accident Commission, respondent herein, by depositing such copy of notice on said date in the postoffice at Portland aforesaid, properly enclosed in an envelope, addressed to said State Industrial Accident Commission, Salem, Marion County, Oregon, and prepaying the postage thereon; that there is regular daily communication by mail between the city of Portland, Oregon, and the city of Salem, Oregon. "_____.

"Subscribed and sworn to before me, this 25th day of February, 1922.
"_____,
"Notary Public for Oregon.
"My Commission expires 14 June, 1924."

On September 19, 1922, the defendant filed a motion to dismiss, as follows:

(Omitting title)'
"Comes now the defendant-respondent * * and moves that this cause be dismissed for the reason that the notice of appeal filed herein is fatally defective and this court is without jurisdiction herein."

A document entitled "Resistance Affidavit" was filed by the claimant. It refers to a previous affidavit appearing on pages 4 and 5 of appellant's abstract of record, reading as follows:

"State of Oregon
County of Multnomah,—ss.
"I, Wm. P. Lord, being first duly sworn, depose and say, that on or about the 25th day of February, 1922, I caused a certified copy of the notice of appeal on file with the clerk of this court in this cause to be deposited in the United States postoffice at Portland, Oregon, in a sealed envelope, plainly addressed to the State Industrial Accident Commission,

Capitol Building, Salem, Oregon; that said notice of appeal, together with the letter accompanying the notice hereunto attached, was registered as disclosed by the receipt, being number 217,529; that said envelope containing the said notice of appeal was stamped with government stamps as provided by law; that the distance between Portland and Salem is 52 miles; that there is daily communication by mail between the city of Portland, Oregon, and the city of Salem, Oregon, and that at each of said places there is a United States postoffice; that subsequent to the 21st of March, 1922, I had several communications with the Attorney General's office at Salem, Oregon, and it was with their consent that this cause was set for trial for the 15th day of September, 1922.

"WM. P. LORD.

"Subscribed and sworn to before me, this 18th day of September, A. D. 1922.

"B. T. HUNT,
"Notary Public for Oregon.
"My Commission expires November 28, 1923."

The affidavit further sets forth copies of communications between the affiant and the Attorney General's office relating to the appeal, which can serve no useful purpose in the disposition of this case.

The court overruled the motion to dismiss.

It was agreed between counsel for the respective parties in open court that "the only issue for the consideration of the court is whether plaintiff was an independent contractor, or a workman of one E. J. Turner and would therefore be entitled to compensation for certain injuries received while painting a pergola * * ."

After receipt of the whole of the evidence, the plaintiff moved for an instruction for a directed verdict; whereupon, the court, after considering the evidence, instructed the jury to return a verdict in

favor of the plaintiff. The State Industrial Accident Commission duly reserved an exception to that instruction.

Upon this appeal, the commission assigns a number of errors, which are noted in the opinion.

AFFIRMED.

For appellant there was a brief over the names of *Mr. I. H. Van Winkle,* Attorney General, and *Mr. James West,* Assistant Attorney General, with an oral argument by *Mr. West.*

For respondent there was a brief and oral argument by *Mr. Wm. P. Lord.*

BROWN, J.—The Industrial Accident Commission, by its attorney, challenged the right of the plaintiff to a hearing in the Circuit Court. By a written motion to dismiss, filed in that court, it averred, in effect, that the Circuit Court had no jurisdiction to entertain the appeal "for the reason that the notice of appeal filed herein is fatally defective."

1. An appeal cannot be taken without proper notice of appeal, and a notice of appeal that is "fatally defective" is not an effective process within the meaning of the law creating and regulating appeals.

2. Now, examining this written motion for the purpose of ascertaining the reason for the defendant's conclusion that the notice is "fatally defective," we fail to find any grounds assigned in, or made a part of, the motion, upon which such conclusion is based. The motion should state the facts constituting the averred defect, and not merely defendant's conclusion.

"The objection or objections on which the motion is founded should be stated specifically, so that the court may readily see that the motion should be granted. Not only must a party assign a ground for his motion, but he must assign all the grounds for the relief sought which he may have." 14 Ency. Plead. & Prac., pp. 118, 119.

In discussing objections based on defects in process or notice, it is said in 3 C. J., page 769, section 691:

"And in making the objection in the lower court, the specific defects complained of should be pointed out." Citing *In re Kasson,* 119 Cal. 489 (51 Pac. 706); *Brown* v. *Goodyear,* 29 Neb. 376 (45 N. W. 618); *Freeman* v. *Burks,* 16 Neb. 328 (20 N. W. 207).

The authors here refer to Section 639, 3 C. J., reading as follows:

"When an objection is made, the trial court and opposing counsel are entitled to know the ground on which it is based, so that the court may make its ruling understandingly, and so that the objection may be obviated, if possible, and therefore, as a general rule objections, whether made by motion or otherwise, and whether to the pleadings, to the evidence, to the instructions or failure to instruct, to the argument of counsel, to the verdict, findings or judgment, or to other matters, must, in order to preserve the question for review, be specific and point out the ground or grounds relied upon, and a mere general objection is not sufficient. The appellate court will not review a question not raised in the court below with sufficient definiteness to make it clear that there was no misunderstanding of the point ruled on. * * Exceptions to this rule have been recognized, however, in certain cases, and general objections have been held sufficient, as for example, where a question or evidence objected to is clearly not competent for any purpose or in any view, where the objection could not have been obviated, even if specific, where it appears from the record

that the court clearly had the particular ground of objection in mind, and in other like cases in which the reason for the rule does not exist.''

Among the many cases cited in support of the foregoing is *Ellis* v. *Abbott,* 69 Or. 234 (138 Pac. 488). In that case, this court, speaking through Mr. Justice MOORE, said:

"In the examination of a cause upon appeal, the inquiry is limited to the identical question considered by the trial court. Any other course of procedure would not be a review. An attorney cannot be permitted to speculate upon the possibility of a judgment favorable to his client, and, if disappointed in this particular, enlarge the objections interposed at the trial. The error insisted upon was not presented in such manner as to notify the court and adverse counsel of the real question now urged, so as to afford an opportunity to make the requisite proof as a condition precedent to the introduction of the deposition in evidence. Such being the case, the error complained of is unavailing."

The defendant's written motion is insufficient to raise the question contained in the commission's assignments of error numbered 1 and 2, to the effect that the lower court erred in overruling defendant's motion to dismiss the appeal on account of the absence of the proof of service of the notice of appeal.

3. This court has repeatedly held that the right of appeal being statutory, the procedure authorizing it must be followed, and that the transcript must disclose notice of appeal and proof of service thereof. See *Wolf* v. *Smith,* 6 Or. 73; *Briney* v. *Starr,* 6 Or. 207; *Hennes* v. *Wells,* 16 Or. 266 (19 Pac. 121); *Baskin* v. *Marion County,* 70 Or. 363 (141 Pac. 1014); *Smith* v. *Director,* 84 Or. 631 (165 Pac. 1171); *Everding & Farrell* v. *Gebhardt Lbr. Co.,* 90 Or. 207 (175

Pac. 611, 176 Pac. 186). In the case last cited, Mr. Justice McBride, in speaking for the court, wrote:

·"The service and filing of the notice of appeal within the prescribed time is jurisdictional, and we have neither the power to extend the time, nor the right to excuse a failure to file the notice within the legal period: *State* v. *Zingsen,* 7 Or. 137; *Odell* v. *Gotfrey,* 13 Or. 466 (11 Pac. 190); *Henness* v. *Wells,* 16 Or. 266 (19 Pac. 121); *Taylor* v. *Lapham,* 41 Or. 479 (69 Pac. 439); *Dowell* v. *Bolt,* 45 Or. 89 (75 Pac. 714)."

These authorities relate to the provisions of Section 550, Oregon Laws (Civil Code). Section 550 is an amendment of Section 527 of "An Act to provide a Code of Civil Procedure," approved October 11, 1862. It now reads: ·

"An appeal shall be taken and perfected in a manner prescribed in this section, and not otherwise:—

"(1) A party to a judgment, decree or final order, or any order from which an appeal may be taken in any action, suit or proceeding, desiring to appeal therefrom, or some specified part thereof, may, by himself or attorney, give notice in open court, or before the judge if the order, judgment or decree be rendered or made at chambers, at the time said judgment, decree or order is made, that he appeals from such decision, order, judgment or decree, or from some specified part thereof, to the court to which the appeal is sought to be taken; and such notice shall thereupon, by order of the court or judge thereof, be entered in the journal of the court. If the appeal is not taken at the time the decision, order, judgment or decree is rendered or given, then the party desiring to appeal may cause a notice signed by himself or attorney to be served on such adverse party or parties as have appeared in the action or suit, or upon his or their attorney, at any place in the state, and file the original, with proof of service

indorsed thereon, with the clerk of the court in which the judgment, decree or order is entered * * ."

4. The foregoing section does not apply to appeals from findings made by the State Industrial Accident Commission.

Section 10 of Chapter 311, General Laws of Oregon, 1921, amending Section 32, Chapter 112, General Laws of Oregon, 1913, as amended in 1917, and codified as Section 6637, Or. L., in part, reads:

"Any beneficiary not satisfied with the decision or findings of said commission may, within sixty days after notice of the final action of such commission, appeal to the Circuit Court of the State of Oregon for the county in which such claimant resides. It shall be sufficient to give the Circuit Court jurisdiction that a notice be filed with the clerk of said court to the effect that an appeal is taken to the Circuit Court from the decision of the commission, the same to be signed by the party appealing or his attorney, and a copy thereof to be served by registered mail on the commission."

The Workmen's Compensation Law provides the procedure for a hearing before the commission and the method of appeal from its decision. There is nothing novel about the act in that respect. Numerous statutory provisions relating to appeals are contained in the Code, entirely independent of Section 550. To illustrate: Section 4553, Or. L., relates to the method of appeal in the matter of laying out and establishing county roads. Section 4299, Or. L., provides the method of appeal from the action taken by the board of equalization under the revenue law of the state.

In the case at bar, the requirements set forth in the provisions of Section 6637, Or L., as amended, were

fully complied with. The plaintiff, within sixty days after notice of the action taken by the commission, filed with the clerk of the Circuit Court of the State of Oregon in and for Multnomah County, a notice of appeal to the Circuit Court from the decision of the commission, and this notice was signed by both the claimant appealing and his attorney of record. It likewise appears from the record, by an affidavit made by the claimant's attorney and on file at the time of hearing the motion, that a copy of the notice of appeal was served by registered mail on the Industrial Accident Commission, within the sixty days' limitation fixed by law. Having complied with the law relating to appeals, and governing the cause at issue, plaintiff was not compelled to indorse his proof of service upon the original notice of appeal, as provided by Section 550, Or. L. It was competent for the plaintiff to make proof of service without an indorsement of the same upon the original notice: *Northern Pac. R. Co.* v. *John Day Irr. Dist.*, 106 Or. 140 (211 Pac. 781).

Jurisdiction, in the case at bar, does not depend upon proof of service, but upon service itself: 2 Hayne on New Trial and Appeal, § 210; citing *In re Newman*, 75 Cal. 213 (16 Pac. 887, 7 Am. St. Rep. 146); *Sichler* v. *Look*, 93 Cal. 600 (29 Pac. 220); *Bank of Orland* v. *Dodson*, 127 Cal. 208 (59 Pac. 584, 78 Am. St. Rep. 42); *Estate of Eikerenkotter*, 126 Cal. 54 (58 Pac. 370); *Sutter County* v. *Tisdale*, 128 Cal. 180 (60 Pac. 757).

As to whether or not proper notice of appeal was given in this case, there is no question. Not only is it established by the record made by the affidavit of plaintiff's attorney, who gave the notice, but the transcript shows that the defendant's attorney ad-

mitted that the notice was given. What further proof do we need?

In *Stephens* v. *Conley,* 48 Mont. 352 (138 Pac. 189, Ann. Cas. 1915D, 958), the Supreme Court of Montana, speaking through Mr. Justice HOLLOWAY, wrote:

"We are forbidden to idolize matters of form at the expense of substance or to pay tithes of mint and anise and cumin while omitting the weightier matters of law."

The plaintiff complied with all the provisions of the law relating to his right to appeal. The commission came into court in accordance with the notice served upon it and, with energy, defended against the claim of the plaintiff.

5. The next question in this case is: Was Frank I. Streby an employee of Turner, or was he an independent contractor?

The testimony upon that subject is brief. Streby testified, in part, as follows:

"Q. Now, I wish you would just state carefully the understanding you had with Mr. Turner how you were to perform this work.

"A. How I was to do the work?

"Q. What your contract of employment was or what your contract with him was to do the painting.

"A. Well, I was to do it by the day. It was only a small job, just a little extension that was built onto the porch for a driveway, and it was only about a couple of days' work to do it.

"Q. What conversation did you have with him about the work?

"A. How?

"Q. Just state the conversation and the understanding that you had with him.

"A. Well, I was to do it by the day.

"Q. How much were you to receive a day?

"A. About a couple of days' work, and he wanted me to estimate what the material and the work would come to, and I told him in the neighborhood of $18; and we was talking along, and I says, 'It won't be over $20 anyway, the labor and material.'

"Q. Well, did you have any understanding with him as to how much you were to receive a day for your work?

"A. Yes, $7.50. * *

"A. Why, I was only working by the day. * *

"Q. Did he, Turner, retain any right to control you in your work?

"A. He had perfect right to control me. * * He told me to go ahead and do the work and keep track of the material that was used on the job.

"Q. Did he say anything about the keeping track of the time or not?

"A. Yes, I have got my time in the book now..

"Q. Did you write your time down at the time?

"A. I did. (Witness produces book.) I have got every day I think down here all together. I worked different days because it was right in the winter time when it was rainy weather, bad weather * * . All the agreement we had, I was to do the work by the day and keep track of the material. He had a right to put me at anything else or fire me or anything that he had a mind to * * , because I was working by the day.

"The Court: What did he say and what did you say when you entered into this agreement?

"A. * * He asked me what it would cost, about; I told him about in the neighborhood of $18 and the material and all, and then we was talking a little unconcerned to the job, and finally he said, 'Well,' he said, 'I will give you $7.50 a day and you keep track of the material and go ahead and do it.' That was all the agreement we had."

Witness testified on cross-examination that he worked parts of three days; that he worked December

22d four hours, December 29th two hours, and January 23d two hours.

Plaintiff rested, and the defendant opened its case by calling A. C. Johnson, an auditor for the State Industrial Accident Commission, who testified that he saw the plaintiff in St. Vincent's Hospital on February 4th, and that Streby said:

"I agreed to do the job for $18."

The auditor then committed to writing the following statement, which was then and there signed by the claimant.

"Portland, Oregon, February 4, 1922.
"State Industrial Accident Commission,
    "Salem, Oregon.
"Gentlemen:
"I hereby certify that I agreed to put on two coats of paint on new part of porch and extension over driveway, for the sum of $18.
            "(Signed)   F. I. STREBY."

Whatever value that admission against interest had was destroyed by defendant's evidence. E. J. Turner testified for the defendant as follows:

"Mr. Streby came over across the street; if I remember right he was working over across the street, and he came over and spoke to me about the painting and I asked him what he would charge and he said $7.50 a day and I says, 'Well, I want three coats of lead and oil,' and I had the priming almost finished, so I said, 'I will finish the priming, but can you go to work this afternoon?' and he said he couldn't. 'Well,' I said, 'When can you do it? I want it finished right away, I would like to have it right away.' 'Well,' he said he couldn't this afternoon, he had to work over on the other job. 'Well,' I said, 'You working by the day and me not here, I am kind of afraid to hire you by the day.' And so he didn't seem to want to take it by the contract. Well,

I told him what I wanted done. Part of it was to have two coats and part of it was to have one, and part of it was to be two colors. My contract with Mr. Lucas was for lead and oil, so I didn't like to let him go ahead and contract it, but I said: 'Well, supposing it runs up too high?' I says, 'I had a bid on it for $24 to do it all, but I was afraid the man wouldn't use good material.'

"The Court: What?

"A. * * I believe then we decided—he told me that it wouldn't run over a certain amount, $20. 'Well,' I says, 'That is too much money.' I says, 'It hadn't ought to run over $12.' 'Well,' he says, 'I will do it by the day and you furnish the material and it will not run over $18, $17 or $18.' So I had some oil left there and I says, 'You charge me up with your paint you use, a reasonable amount of money, and do the job and send in your bill for it. * *

"Q. Who directed the work that he was doing there?

"A. I did, sure.

"(Cross-examination.)

"Q. You stated on your direct examination that you did, in fact, direct the work?

"A. Why, sure. * *

"Q. You understood all the time that you had the right to discharge him, did you?

"A. Why, sure. * *

"Q. You saw the work that he was doing, and you were satisfied with it as far as it progressed, were you?

"A. Yes, sir, he done a good job as far as he went."

The attempt to draw the line of distinction between employees and independent contractors

"has involved the courts in much perplexity and some inconsistency * * . The value of precedents is somewhat uncertain. A slight difference in the wording of statutes, or some small variations in the circumstances, may impair the value of an outside decision when attempt is made to apply it here." *Kelly's Dependents* v. *Hoosac Lbr. Co. et al.,* 95 Vt.

50 (113 Atl. 818, 118 Atl. 550, 20 Neg. & Comp. Cas. 902).

We will look to our jurisdiction for the meaning of the terms used in the Workmen's Compensation Act:

"The term 'employer,' used in this act, shall be taken to mean any person * * that shall contract for and secure the right to direct and control the services of any person, and the term 'workman' shall be taken to mean any person, male or female, who shall engage to furnish his or her services subject to the direction or control of an employer."    Sec. 6619, Or. L.

In the case of *Anderson* v. *Industrial Accident Commission, ante,* p. 304 (215 Pac. 582), decided this day, Mr. Justice RAND, speaking for the court, wrote:

"The statute defines what constitutes an employer and a workman. In a general sense the word 'workman,' as used in the act, is synonymous with the word 'employee' and means, as stated in the statute, 'any person, male or female, who shall engage to furnish his or her services, subject to the direction or control of an employer.' This implies a legal conception entirely different from that of an independent contractor. To be a workman within the meaning of the statute there must be an employer, and this employer must contract for and secure the right to direct and control the services of the workman, while the workman himself must engage to furnish his services subject to the direction or control of the employer. To create this relation there must be a contract of employment, either express or implied."

In *Scales* v. *First State Bank,* 88 Or. 490 (172 Pac. 499), this court said, through Mr. Justice HARRIS, that the following definition of the term "independent contractor" was concise and had frequently met with judicial approval:

"An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to control of his employer, except as to the result of his work."

Under the testimony in this case, the court was warranted in finding that the plaintiff contracted his services subject to the direction and control of E. J. Turner as his employer, for wages, at the rate of $7.50 a day. Hence, the court made no error in finding, as a matter of law, from the undisputed facts, that the plaintiff was a workman, as defined by the workmen's compensation law. This disposes of all assignments of error other than assignment numbered 5, and that is not within the compass of the hearing on appeal, because the court disposed of the case as a matter of law without submitting the cause to the jury.                                        Affirmed.

This case is affirmed.

McBride, C. J., and Bean and Harris, JJ., concur.